UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Thomas W. Wales, | Civ. No. 08-39 (JNE/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dr. Tran, individually and in his official capacity; Dr. Shelly Stanton, individually and in her official capacity; Dr. Anderson, individually; Mr. Jack Bakker, individually and in his official capacity; the F.B.O.P.; the Mayo Clinic, Rochester; | |
| Respondents. | |

Thomas W. Wales, 14674-031, Rochester Federal Medical Center, P. O. Box 4000, Rochester, MN 55903, *pro se*.

Lonnie F. Bryan, Esq., Assistant United States Attorney, for Respondents Dr. Tran, Dr. Shelly Stanton, Dr. Anderson, Mr. Jack Bakker, and the F.B.O.P.

Gregory E. Karpenko, Esq., and Nicole M. Moen, Esq., Fredrikson & Byron, PA; and Peter Galindez, Jr., Esq., Mayo Clinic Legal Department, counsel for Respondent Mayo Clinic.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before this Court pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), on Defendant Mayo Clinic Rochester's ("Mayo") Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. No. 16). Specifically, Mayo moves to dismiss Plaintiff's Third and Sixth

Causes of Action in Plaintiff's Complaint as asserted against Mayo. In addition, this Court considers Plaintiff's Motion for Leave to File "Plaintiff's First Amended Complaint" pursuant to FRCivP. Rule 15(a) (Doc. No. 69), and Plaintiff's Motion for Injunctive Relief or [sic] in the Alternative Write of Mandamus (Doc. No. 77). For the reasons stated below, this Court recommends that Mayo's Motion to Dismiss should be granted, Plaintiff's Motion for Leave to File "Plaintiff's First Amended Complaint" be denied in part, and Plaintiff's Motion for Injunctive Relief be denied.

## **BACKGROUND**

Mayo is a medical practice located in Rochester, Minnesota, that provides medical care to federal prisoners under a contract with the Federal Medical Center. (Doc. No. 1, Compl. ¶ 7.) Plaintiff alleges that he suffered various injuries while incarcerated at the Rochester, Minnesota, Federal Bureau of Prisons, and treated at the Federal Medical Center, by, among others, Mayo physicians. (*Id.* ¶¶ 1, 7.)

The gravamen of Plaintiff's Complaint against Mayo is set forth in Plaintiff's third cause of action, which is entitled "Experimental Surgury [sic] and Tainted Blood Transfusion." Plaintiff alleges:

> 72.  Plaintiff will bring proof to a jury that the medical administration and Mayo Clinic Rochester have an unconstitutional arraingement [sic] for inmates to be subjected to experimental and/or otherwise unnecessary surguries [sic] or treatment and that Plaintiff was placed in this program when FMC staff permitted Mayo Clinic Rochester (hereafter "Mayo"0 [sic] to operate on him and remove the gall bladder, to remove a source of pain in Plaintiff's

2

> torso, but that there was nothing wrong with the gall bladder and that pain remains, causing Plaintiff needless scarring, continued pain and suffering, in violation of his rights.
>
> 73.    That Plaintiff was exposed to and provide [sic] with "tainted blood" while at Mayo hosiptal [sic] during the relevant times of his surgury [sic] sessions at Mayo, infecting and contaminating Plaintiff with Hepatitis C and that neither FMC or mayo [sic] will now treat him with Interferon to erradicate [sic] that newly acquired serious blood disease.

(*Id.* ¶¶ 72-73.)  Plaintiff alleges that Mayo is liable to him for "damages under the Tucker Act[s], 28 USC § 1491 in the sum of no more than $10,000.00 for the reckless endangerment of Plaintiff for performing a useless surgury [sic] and exposing him to a serious deadly blood disease and disorder."  (*Id.* ¶ 74.)  Plaintiff also asserts a claim for damages "in excess of $100,000.00" in actual, compensatory, and punitive damages for subjecting Plaintiff "to an experimental surgery to avoid treating him for his pain and suffering."  (*Id.* ¶ 75.)

In addition, Plaintiff alleges that the needless surgery "triggered an 'arythmia' and related heart damage."  (*Id.* ¶ 31.)  Plaintiff contends that Mayo hid the heart arrhythmia from him and denied him treatment for this condition as part of a conspiracy between Mayo and the Federal Bureau of Prisons.  (*Id.* ¶ 84.)  Plaintiff claims that under this cause of action he is entitled to damages for a "systemic denial of medical care" in an amount in excess of $100,000.00 for actual, compensatory, and punitive damages.  (*Id.* ¶ 86.)

## **DISCUSSION**

**I.     DISMISSAL OF TUCKER ACT CLAIM**

In his Complaint, Plaintiff describes his Third Cause of Action as a claim for "damages under the Tucker Act[s] 28 U.S.C. § 1491 . . . ."  (Compl. ¶ 75.) The Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over certain contract claims against the United States that are *in excess of $10,000.00*.  To the extent that Plaintiff seeks damages "in excess of $100,000" for his Tucker Act claim—as he does in ¶ 75—this Court does not have jurisdiction over such a claim and it must be dismissed.  However, the Little Tucker Act, 28 U.S.C. § 1346(a)(1), confers concurrent jurisdiction on the United States District Courts over contract claims against the United States where the Plaintiff alleges damages *of $10,000 or less*.  See *Taylor v. United States*, 248 F.3d 736, 737 (8th Cir. 2001).  Because Plaintiff also seeks damages "in the sum of no more than $10,000"—as he does in ¶ 74—it may be assumed that the Plaintiff seeks to assert a claim under the Little Tucker Act, a claim over which this Court could conceivably have concurrent jurisdiction.

Even when making this assumption, however, the Complaint fails to state a claim for relief under the Little Tucker Act because Plaintiff has not alleged a claim for damages *against the United States*.  The Little Tucker Act provides no basis for a common law tort suit by Plaintiff against Mayo for alleged wrongdoing by Mayo in providing, or failing to provide, medical services to the Plaintiff. Further, even if we construe Plaintiff's Complaint as alleging a claim for the

4

recovery of damages for Mayo's breach of its contract with the United States by providing negligent medical treatment to the Plaintiff or by providing "tainted blood," the Complaint still fails to state a claim upon which relief can be granted. "Little Tucker Act claims for breach of contract can only be made against the United States, not on its behalf." *Jackson v. Fed. Bureau of Prisons*, Civ. No. 06-1347 (MJD/RLE), 2007 WL 843839, at *21 (D. Minn. Mar. 16, 2007) (dismissing federal prisoner's Tucker Act and Little Tucker Act claims against Mayo on the grounds that the Acts apply to claims against the United States – not private contractors); *see also Roedler v. Dept. of Energy*, 255 F.3d 1347, 1351 (Fed. Cir. 2001) ("Third party beneficiaries of a contract to which the United States is a party may assert a claim *against the United States*, in accordance with the law governing third party claims.") (Emphasis added.)[1] Thus, the Little Tucker Act claims in Plaintiff's Complaint (the Third Cause of Action) should be dismissed.

## II.   DISMISSAL OF PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

The Third and Sixth Causes of Action alleged in Plaintiff's Complaint can also be construed as claims against Mayo for intentionally denying or delaying access to medical care, or being deliberately indifferent in responding to

---

[1]   In addition, the Little Tucker Act claim cannot be reformulated as a breach of warranty or strict liability claim against Mayo arising out of the allegedly tainted blood transfusions Plaintiff received because the immunity provision of the Minnesota Uniform Anatomical Gift Act, Minn. Stat. § 525A.18 (formerly promulgated at Minn. Stat. § 525.921) bars this claim. *See Doe v. Travenol Labs., Inc.*, 698 F. Supp. 780, 784 (D. Minn. 1988) (dismissing claims for breach of warranty and strict liability based on tainted blood).

Plaintiff's medical needs, in violation of the Eighth Amendment of the U.S. Constitution.  Deliberate indifference to a prisoner's serious medical needs is prohibited as "cruel and unusual punishment" under the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Bellecourt v. United States*, 784 F. Supp. 623, 633 (D. Minn. 1992).

Here, claims for violation of the Eighth Amendment are governed by *Bivens*, which provides a cause of action for constitutional violations by federal officers.  *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  A *Bivens* action may be brought only against individual federal officers—not a private entity like Mayo.  *See Corr. Servs. Corp. v. Melesko*, 534 U.S. 61, 71 (2001) (stating that *Bivens* has been based on "the deterrence of individual officers who commit unconstitutional acts"); *see also Sinclair v. Hawke*, 314 F.3d 934, 940 (8th Cir. 2003) (stating that the Supreme Court has "refused to extend *Bivens* to claims against federal agencies and private government contractors, as opposed to individual federal officials").  Therefore, Plaintiff's claims against Mayo for intentionally denying or delaying access to medical care, or being deliberately indifferent in responding to Plaintiff's medical needs should be dismissed.

## III.    COMMON LAW CLAIMS

Plaintiff's claims against Mayo can also be construed as common law claims of breach of the professional duty Mayo owed to Plaintiff in connection with Plaintiff's medical treatment.  However, Plaintiff has not filed any expert affidavit attesting to a medical expert's opinion that Mayo "deviated from the

6

applicable standard of care and by that action caused injury to the plaintiff[,]" which, under Minnesota law, must accompany such an action. Minn. Stat. § 145.682, subd. 3. There is no exception to the requirement of expert opinion affidavits in actions commenced by *pro se* plaintiffs. *See, e.g.*, Minn. Stat. § 145.682, subd. 5 ("If the plaintiff is acting pro se, the plaintiff shall sign the affidavit . . . referred to in this section and is bound by those provisions as if represented by an attorney."). The failure to supply such an accompanying expert review affidavit must result in dismissal of the complaint. Minn. Stat. § 145.682, subd. 6; *Plutshack v. Univ. of Minn. Hosps.*, 316 N.W.2d 1, 5 (Minn. 1982) (stating that claims for "negligent care and treatment" require expert testimony); *Tineo v. Fed. Bureau of Prisons*, No. Civ. 05-724 (ADM/SRN), 2005 WL 1745451, at *3 (D. Minn. July 22, 2005) (dismissing prisoner's medical malpractice claims for failure to submit expert review affidavit); *Semler v. Finch*, No. A06-1178, 2007 WL 1976751, at *3 (Minn. Ct. App. July 10, 2007) (same).

In conclusion, based on all of the above reasoning, all of Plaintiff's claims against Mayo in the Complaint should be dismissed for failure to state a claim upon which relief can be granted.[2]

---

[2]  After Defendant Mayo filed its Motion to Dismiss the Complaint, Plaintiff filed a motion for leave to file a First Amended Complaint. (Doc. No. 69.) The proposed First Amended Complaint does not specifically assert a claim under the Tucker Act or Little Tucker Act, nor does it assert a *Bivens* claim for Eighth Amendment violations. Therefore, it appears that Plaintiff is abandoning those claims. However, because this is an action in which Plaintiff is proceeding *pro se*, the Court is not certain that Plaintiff intended for his First Amended Complaint
(Footnote Continued on Next Page)

## IV.   MOTION TO AMEND COMPLAINT

"Good reason to deny leave to amend exists if amendment would be futile." *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 225 (8th Cir. 1994). And denying leave to amend because the amended claims would be futile "means that that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

If this Court's recommendation to grant Mayo's Motion to Dismiss is adopted, then Plaintiff's Motion for Leave to File "Plaintiff's First Amended Complaint" pursuant to FRCivP. Rule 15(a) (Doc. No. 69) should be denied as to the claims alleged against Mayo and the other "Mayo Defendants"[3] who Plaintiff would add to the case.[4] In the Fifth Cause of Action of the First Amended

---

(Footnote Continued from Previous Page)
to completely supersede his original Complaint. Giving his Complaint the benefit of a liberal construction because of Plaintiff's *pro se* status, see *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (*per curiam*), this Court hereby addresses the Motion to Dismiss and recommends that all of the claims in the Complaint against Mayo be dismissed for failure to state a claim upon which relief can be granted.

[3]   The Mayo Defendants are: (1) Mayo Clinic, Rochester; (2) Dr. McGoon; (3) Dr. Bannon; (4) Dr. Gross; and (5) Mayo Clinic Doe Defendants.

[4]   In this Court's October 14, 2008 Order and Memorandum, this Court grants in part Plaintiff's Motion for Leave to File "Plaintiff's First Amended Complaint" pursuant to FRCivP. Rule 15(a) as to Plaintiff's claims asserted against the Federal Defendants because Plaintiff may amend his Complaint "once as a matter of course" at any time before he has been served with a "responsive pleading." Fed. R. Civ. P. 15(a)(1)(A). Although the same argument
(Footnote Continued on Next Page)

8

Complaint (as proposed), Plaintiff would assert claims against Mayo, and Drs. McGoon, Bannon and Gross[5] for "negligent acts or [o]missions, breach of warranty, [and] strict [l]iability for injuries sustained to Plaintiff by Mayo's [f]iduciary breach [t]owards his health, [i]ncluding [i]nfecting Plaintiff with Hep-C and Mayo's [r]efusal to treat that [d]eadly [d]isease."  (Proposed First Amended Compl. 29.)  Therefore, the proposed First Amended Complaint identifies the same course of conduct as that set forth in the original Complaint, but the proposed First Amended Complaint specifies, and adds as Defendants, the individual Mayo physicians who were involved in providing medical services to Plaintiff.[6]

Specifically, the proposed First Amended Complaint includes the following allegations against Mayo and its physicians: (1) Dr. Bannon negligently infected

---

(Footnote Continued from Previous Page)
can be made as to Plaintiff's amended claims asserted against the Mayo Defendants, here a valid futility argument has been raised.  Because it would only cause needless delay and would be an inefficient use of the parties' and the Court's time to allow the Amended Complaint as against the Mayo Defendants only to then turn around and dismiss the claims pursuant to further motion practice, this Court recommends denying Plaintiff's motion for leave to amend the Complaint as to Plaintiff's claims against the Mayo Defendants.

[5]   Plaintiff states that "all Mayo Medical Defendants [would be] sued in both professional/personal capacity[.]"

[6]   In addition, the proposed First Amended Complaint is somewhat narrower in its legal claims against the Mayo Defendants than the original Complaint because there is no longer an allegation of violations of the Tucker Act or the Little Tucker Act, nor is there an Eighth Amendment *Bivens* claim.  See note 2, *supra* at 7-8.

Plaintiff with Hep-C during the course of gallbladder surgery, but the gallbladder surgery was not necessary and it caused a heart "arythemia"; (2) Mayo physician Dr. McGoon began treating the arrhythmia, but abandoned his obligation and fiduciary duty once this lawsuit was filed; (3) Mayo physician Dr. Gross began treating Plaintiff for the Hep-C but then abandoned that care, breached his agreement with Plaintiff to treat the Hep-C virus, and breached his fiduciary duty; and (4) Mayo did not ensure that all surgical staff in the operating theater were free of any blood-borne pathogens, such as Hep-C, but allowed its medical staff with such diseases to operate on "persons." (Proposed First Amended Compl. ¶¶ 128-131.) Therefore, Plaintiff asserts that Mayo is strictly liable for negligent injuries that result from the use of such defective, dangerous, or unmonitored material and is liable to Plaintiff in damages as a result of its negligence, breach of fiduciary duty, and conduct that shocks the conscience. (*Id.* at ¶ 131.)

Even though Plaintiff does not describe his claims against the Mayo Defendants as "medical malpractice," the proposed First Amended Complaint, like the original Complaint, is governed by Minn. Stat. § 145.682, which requires that an "expert review affidavit" must be submitted with the complaint. The statutory requirement of an expert-review affidavit applies "[i]n an action alleging malpractice, error, mistake, or failure to cure, *whether based on contract or tort*, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case . . . ." Minn. Stat. § 145.682, subd. 2 (emphasis added). All of the complained-of conduct in the

proposed First Amended Complaint flows from the medical diagnosis, treatment, and care of Plaintiff by the Mayo Defendants and thus comes within the scope of Minn. Stat. § 145.682. Section 145.682 was designed to eliminate nuisance lawsuits about the provision of medical care by requiring plaintiffs to file affidavits to verify that their allegations are well-founded. *Stroud v. Hennepin County Med. Ctr.*, 556 N.W.2d 552, 555 (Minn. 1996). This legislative purpose "would not be fully effectuated if [Plaintiff] were allowed to remove his claim from the purview of section 145.682 by simply categorizing the claim as one for deliberate indifference or breach of warranty." *Way v. Foley Dental Office*, No. C8-91-1506, 1992 WL 43301, at *2 (Minn. Ct. App. Mar. 10, 1992) (concluding that an expert review affidavit was required in an action alleging breach of warranty and deliberate indifference in dental treatment); *see also Fridell v. Commonbond Cmtys., Inc.*, No. A07-0665, 2008 WL 434616, at *3-4 (Minn. Ct. App. Feb. 19, 2008) (requiring expert-review affidavit in an action for breach of warranty and breach of statutory duty of landlord to tenant regarding assisted living facility's health care of plaintiff); *Comstock v. Nippoldt*, No. CX-01-960, 2002 WL 109488, at *2 (Minn. Ct. App. Jan. 29, 2002) (requiring expert-review affidavit in an action for breach of contract, violation of Consumer Fraud Act, and breach of consumer warranties when rendering patient care); *Haile v. Sutherland*, 598 N.W.2d 424, 429 (Minn. Ct. App. 1999) (concluding that patient's claim for medical assault and battery was a claim for medical malpractice requiring expert testimony).

The proposed First Amended Complaint contains a single cause of action

against the Mayo Defendants, "a cause of action as to which expert testimony is necessary to establish a prima facie case . . . ." Minn. Stat. § 145.682, subd. 2. The claims against the Mayo Defendants require "specialized knowledge"—and thus require expert testimony—to establish a prima facie case of breach of the duty of medical care or supervision owed to Plaintiff by the Mayo Defendants. Expert testimony would be required to answer each of the following questions raised by allegations against the Mayo Defendants: (1) was the gallbladder surgery medically necessary; (2) was Plaintiff infected with Hep-C during the surgery; (3) if so, did this occur as a result of a breach of the standard of care that was required; (4) did the surgery cause a heart arrhythmia; (5) did Dr. McGoon mistreat Plaintiff's heart arrhythmia in breach of the standard of care; and (6) did Dr. Gross mistreat Plaintiff's Hep-C in breach of the standard of care. Moreover, even if Plaintiff established that the Mayo Defendants are liable to Plaintiff for breaching their duty to Plaintiff, Plaintiff would still have to prove, through expert testimony, that his injuries, and resulting damages, were caused by the Mayo Defendants' wrongdoing. This issue of causation, like the issue of whether Plaintiff received medical treatment that was improper under the circumstances, is not one that is within the knowledge of a lay person and is not exempt from the expert-affidavit requirements. See Way, 1992 WL 43301, at *2; Fridell, 2008 WL 434616, at *3-4; Comstock, 2002 WL 109488, at *2; Haile, 598 N.W.2d at 429.

In conclusion, Plaintiff's Motion for Leave to File "Plaintiff's First Amended

Complaint" pursuant to FRCivP. Rule 15(a) should be denied in part as to the claims asserted against the Mayo Defendants. Any amendment would be futile in light of the fact that Plaintiff has not met the expert-affidavit requirements set forth in Minn. Stat. § 145.682.

**V.    Motion for Injunctive Relief**

Plaintiff requests a preliminary injunction or in the alternative a writ of mandamus. Specifically, Plaintiff requests that an injunction be issued that: (1) compels the medical staff to issue Plaintiff a walker; and (2) compels the Unit team to prepare and submit a CCC referral package, allowing the Kansas USPO to determine whether they will supervise Plaintiff for 180 days of home confinement. The Federal Defendants have not responded to Plaintiff's motion.

First, the Court notes that Plaintiff requests preliminary injunctive relief regarding certain things for which he does not expressly seek relief in his Complaint or in his proposed First Amended Complaint. Although Plaintiff references the medical staff refusing Plaintiff the use of a walker in his proposed First Amended Complaint, Plaintiff does not make any assertions that relate to the Unit team neglecting to prepare and submit a CCC referral package. The Court cautions Plaintiff that preliminary injunctions generally are not properly sought to order incidental relief peripheral to that which a movant seeks pursuant to a final judgment on the merits. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's

13

motion and the conduct asserted in the complaint.").

Even so, the Court considers the following factors in determining whether or not to grant a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  A preliminary injunction is a "drastic and extraordinary" remedy and should only issue in exceptional circumstances when "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113.

An essential element for granting a preliminary injunction is a "likelihood of success on the merits." *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("The party seeking injunctive relief bears the burden of proving all the *Dataphase* factors.").  Although Plaintiff has made a compelling argument as to his requests for a walker and for the submission of a CCC referral package, for which there has been no rebuttal filed, Plaintiff has not made a showing of any likelihood of success on any of his claims against the Federal Defendants asserted in his Complaint or in his Amended Complaint.  Accordingly, this Court recommends that Plaintiff's request for an injunction be denied.  The Court notes, however, that it may be in the Federal Defendants' best interests to comply with Defendants two requests.

Plaintiff alternatively seeks the issuance of a writ of mandamus. "A district court may grant a writ of mandamus only in extraordinary situations, and only if: (1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." *Castillo v. Ridge*, 445 F.3d 1057, 1060 (8th Cir. 2006). The Eighth Circuit has noted that an order for a writ of mandamus may issue only "in those exceptional circumstances amounting to a judicial usurpation of power." *In re Medtronic, Inc.*, 184 F.3d 807, 810 (8th Cir. 1999) (quotations omitted).

Courts in the Eighth Circuit are controlled by five guidelines that are to be balanced in determining whether a petition for a writ of mandamus, or mandamus jurisdiction, will be granted: (1) the party seeking the writ has no other adequate means to attain relief; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the challenged district court order is clearly erroneous as a matter of law; (4) the challenged district court order is an oft-repeated error, or manifests persistent disregard of federal rules; and (5) the challenged district court order raises new and important problems, or issues of law of first impression. *In re Bieter Co.*, 16 F.3d 929, 932 (8th Cir. 1994).

Here, there is no challenged district court order at issue. Therefore, mandamus jurisdiction may not be invoked. Accordingly, this Court recommends that Plaintiff's request for a writ of mandamus be denied as well.

## **RECOMMENDATION**

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.   Defendant Mayo Clinic's Motion to Dismiss (Doc. No. 16) be **GRANTED**;

2.   Plaintiff's claims in the Complaint against Mayo Clinic, Rochester, be **DISMISSED WITH PREJUDICE**;

3.   Plaintiff's Motion for Leave to File "Plaintiff's First Amended Complaint" pursuant to FRCivP. Rule 15(a) (Doc. No. 69) be **DENIED IN PART** as to the claims alleged against the Mayo Defendants; and

4.   Plaintiff's Motion for Injunctive Relief or [sic] in the Alternative Writ of Mandamus (Doc. No. 77) be **DENIED**.

Dated: October 14, 2008

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by October 28, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This

Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.